### Alexander Beach v. The People.

A person is not punishable criminally for maintaining a dam whereby no greater nuisance is created, and of no different character, than would have existed without it.

On the trial of an information for causing a nuisance by a mill dam, the question whether the stream as dammed is as healthy to the neighborhood as it would be.if the mill pond was drawn down, the river channel ditched, the water drained from the low lands, and the whole converted into a beautiful meadow, is not an admissible test of nuisance.

*Heard November 22d. Decided December 6th.*

Error to Hillsdale Circuit.

Plaintiff in error was.proceeded against by information for an alleged nuisance caused by obstructing the waters of the St. Joseph River, by a dam in the township of Fayette in Hillsdale county, thereby causing stagnant water, noisome and unwholesome stenches, and producing sickness and disease in the vicinity.

On the trial, Dr. Everett having been examined on the part of the prosecution to establish the fact of nuisance, and having been then cross-examined, was afterwards asked by the prosecution the following question: "If the mill pond was drawn down, and the channel of the St. Joseph ditched, and the water drained from the low lands, and the same reduced to a beautiful meadow, would the stream and low lands be likely to cause as much sickness as the pond in its present condition?" This question was objected to by defendant, but the objection overruled, and the witness answered in the negative. Similar questions were allowed to be put to and answered by other witnesses.

For the defense the following questions were put to Dr. Delavan, all of which were overruled by the Court as irrelevant.

"Would this pond rise and fall more in its present condition than the stream would in its natural condition if the pond was drawn down?"

"Would the pond in its condition last summer [the time embraced in the information] be more or less productive of disease than the stream in its natural condition if the dam was torn down?"

"Was the condition of the pond in its state last summer more injurious to the health of the community around it than the stream in its natural state if the dam was removed?"

The testimony being closed, the Circuit Judge was asked by defendant to charge the jury, among other things: That if the jury find from the proofs that the maintenance of the dam and pond do not have a tendency to produce more disease than the stream would produce in its natural channel without the dam and pond, they should acquit. Also, that if the jury find from the proofs that the smells arising from the pond are not different in character or amount from those arising from the water in the St. Joseph River in its natural channel, and that the effect produced by the dam and pond are not different in character or amount from those produced by the waters of the St. Joseph in its natural channel, they should acquit. These requests were refused, and the jury returned a verdict of guilty.

*C. I. Walker*, for plaintiff in error.

*C. Upson, Attorney General*, and *G. V. N. Lothrop*, for the People.

CAMPBELL J.:

Defendant below, who is plaintiff in error, was indicted for maintaining a mill-dam. The exceptions taken to the

reception and rejection of evidence, and to the refusal of
the Court to charge as requested, present substantially
but one question; which is, whether a party is punishable,
who maintains a dam whereby no greater nuisance is
created than would have existed without it, and where
the nuisance existing, if any, is of the same character. We
think the question too plain for argument. A person law-
fully using a water-course can not be guilty of a public
nuisance, unless that nuisance is the consequence of his
conduct; and a mere change in the mode of enjoyment,
which involves no increase of evil, can not by any reasona-
ble rule be said to be an injurious act. Streams susceptible
of use for mills may be used for that purpose without
criminality unless the use involves some public grievance
not before existing, which would not otherwise have been
created. To hold that a mill-dam is a nuisance, when
the stream without it would produce the same extent and
kind of mischief, would be equivalent practically to render-
ing the erection of mill-dams generally an indictable offense;
for it is hardly possible that the water of mill-ponds
should be so entirely limpid as to contain none of the
impurities which abounded in the stream before its obstruc-
tion; although, by covering marshy spots periodically
flooded and exposed to the sun, the noxious exhalations
may be greatly diminished. We think the charges refused
should have been granted, and that the testimony excluded
should have been admitted.

The prosecution was permitted to ask witnesses whether
the stream as dammed was as healthy to the neighborhood
as it would be if the mill-pond was drawn down, the
river channel ditched, the water drained from the low
lands, and these lands converted into a beautiful meadow.
This is not an admissible test. There is no rule of law
requiring the lands of this state to be placed in such a
desirable condition, or rendering land owners criminally
responsible for not improving them in that manner.

BEACH *v.* THE PEOPLE.

The judgment below must be reversed, and a new trial granted.

MARTIN CH. J. and MANNING J. concurred.

CHRISTIANCY J. was absent.